UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Al.C., A.P., An.A., An.D., Ari.R., Arn.R., A.V., C.V., E.M., Ed.T., E.D.L., E.L., Er.T., F.S., F.T., F.B., G.D.L., G.O., H.V., J.N.B., J.F., J.A., J.C., J.P., L.G., P.C., Ra.L., Ra.V., R.B., R.B.E., Re.C., Ri.C., R.F., Rog.B., Rom.B., R.E., R.N., R.T., T.L., and V.M.,

Plaintiffs,

v.

JACOBS SOLUTIONS INC., JACOBS ENGINEERING GROUP INC., CH2M HILL COMPANIES, LTD., CH2M HILL INTERNATIONAL, LTD., and CH2M HILL INTERNATIONAL B.V.,

Defendants.

Case No. 1:25-cv-00274-RMR-CYC

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Habib Nasrullah
Frederick R. Yarger
Danyaal Waheed
WHEELER TRIGG O'DONNELL LLP
370 17th Street
Suite 4500
Denver, CO 80202-5647
303-244-1800

Maura Kathleen Monaghan
Mark W. Friedman
William H. Taft V
James P. Schaefer
Justin R. Rassi
Lisa W. Lachowicz
Ardis Strong
Alessandra G. Masciandaro
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
212-909-6000

*Attorneys for Defendants*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

PRESERVATION STATEMENT .......... 3

NAMED DEFENDANTS .......... 3

STATEMENT OF FACTS .......... 4

ARGUMENT .......... 7

I. The Highway Plaintiffs Still Have Not Plausibly Alleged a § 1589(b) Claim. .......... 7

A. Plaintiffs Plead an Impermissibly Overbroad and Incoherent "Venture" .......... 7

B. Defendants Did Not Participate in the Newly Alleged "Venture" .......... 11

II. The Highway Plaintiffs Lack Standing .......... 13

A. Without "Participation in a Venture," There Cannot Be Standing .......... 13

B. In Any Event, Habtoor Leighton Breaks the Chain of Causation .......... 14

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## Cases

*A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389, 2026 WL 504904 (S.D.N.Y. Feb. 24, 2026)........ 11

*Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ........ 9

*Coubaly v. Cargill Inc.*, 144 F.4th 343 (D.C. Cir. 2025) ........ 8

*Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024)........ 13

*Doe I v. Apple Inc.*, No. 1:19-cv-03737, 2021 WL 5774224 (D.D.C. Nov. 2, 2021)........ 9

*F.C. v. Jacobs Solutions Inc.*, 790 F. Supp. 3d 1158 (D. Colo. 2025) ........ *passim*

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997)........ 4

*Murthy v. Missouri*, 603 U.S. 43 (2024)........ 15

*Spokeo, Inc. v. Robins* 578 U.S. 330 (2016) ........ 14

*Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464 (S.D.N.Y. 2021)........ 15

## PRELIMINARY STATEMENT

The Court gave Plaintiffs clear direction. On March 30, 2026, it dismissed 19 Plaintiffs' claims because the Complaint failed to allege any plausible connection between Defendants and the highway construction projects on which those Plaintiffs allegedly worked (the "Highway Plaintiffs"). The Court was explicit: "[t]here is no factual basis in the Complaint connecting [Defendants] to Habtoor or the road construction project." Dkt. 57, at 9. Plaintiffs were given the opportunity to fix that defect. They did not.

The First Amended Complaint ("FAC," Dkt. 67) changes nothing that matters. It adds no new factual allegations about the Highway Plaintiffs themselves. It does not connect any Defendant to any specific road or highway project. And it does not allege that Defendants had any role—contractual or otherwise—in Habtoor Leighton Group's ("Habtoor") work for Ashghal, Qatar's Public Works Authority. The gap the Court identified remains exactly where it was.

Unable to allege facts that would fit Habtoor within the scope of the alleged venture, which centers on the Supreme Committee for Delivery & Legacy's ("SC") work to deliver World Cup stadiums, the Highway Plaintiffs resort to redefining the venture itself. They expand it—dramatically—to sweep in virtually all infrastructure development and public works across Qatar in the decade leading up to the World Cup, regardless of whether those projects had any connection to World Cup stadium construction or the SC. In doing so, the Highway Plaintiffs stretch the already attenuated connection between Defendants and their employers beyond the breaking point, rendering the venture untenable as a

matter of law.

The FAC still fails to plausibly allege a “venture.” The only identifiable relationship alleged in this case is the Programme Management Consultant Contract (“PMC Contract”) [redacted]. Nearly every new allegation in the FAC hinges on that contract and the alleged relationship it created [redacted]

The FAC also still fails to allege “participation.” It falls back on generic assertions that “CH2M” coordinated or monitored unspecified “infrastructure projects” and could consult with the SC on nonbinding recommendations to other Qatari government agencies. But that is not “participation” in a TVPRA venture with those other Qatari government agencies or their contractors. No contractual privity is alleged between the Defendants, the SC, and Ashghal or Habtoor. The chain of privity the Court found sufficient—Defendants to the SC to its subcontractors—breaks when applied to the Highway Plaintiffs. The FAC also does not allege that any remaining Defendant performed tailored services for, exercised control over, or had any involvement in the specific road projects on which the Highway Plaintiffs allegedly worked. Plaintiffs cannot rely on conduct attributed to CHBV—a now-dismissed Defendant—to try to close that yawning gap.

The failure is also Plaintiff-specific. The FAC does not tie any Defendant to any

particular Highway Plaintiff, any particular road project, or any alleged act of forced labor against that Highway Plaintiff. That omission drove the Court's prior ruling. It remains uncorrected.

These defects are dispositive. No venture. No participation. And no standing. The causal chain the Highway Plaintiffs propose—Defendants to the SC, to independent sovereign entity Ashghal, to Habtoor, to the Highway Plaintiffs—is precisely the kind of attenuated, speculative theory Article III forbids. Having failed to replead a viable claim, the Highway Plaintiffs' claims should be dismissed with prejudice.

## PRESERVATION STATEMENT

This Court's March 30, 2026 order addressed issues beyond the Highway Plaintiffs' standing and their Section 1589(b) claims. In the interest of efficiency, Defendants do not re-raise arguments here that the Court has already determined, including as to the claims asserted by the 21 Plaintiffs who allegedly worked on World Cup stadium construction (the "Stadium Plaintiffs"). Defendants respectfully maintain all those arguments and preserve them for further review, including on appeal.

## NAMED DEFENDANTS

Plaintiffs name as Defendants CHBV, CH2M HILL Companies, Ltd., CH2M HILL International, Ltd., Jacobs Engineering Group Inc., and Jacobs Solutions Inc. For purposes of this motion "Defendants" shall mean CH2M HILL Companies, Ltd., CH2M HILL International, Ltd., and Jacobs Engineering Group Inc.[1]

---

1 This Court dismissed CH2M Hill International B.V. and Jacobs Solutions Inc. for lack of personal jurisdiction. Dkt. 59. The FAC adds no new jurisdictional allegations as

## STATEMENT OF FACTS[2]

[redacted].[3] Plaintiffs allege that, under the PMC Contract, CHBV was engaged to "oversee and manage delivery [of] the World Cup Construction Venture." FAC ¶ 57. [redacted]

As to the Stadium Plaintiffs, the allegations in the FAC remain unchanged.

---

to either dismissed entity, and Plaintiffs did not seek leave to amend to do so. CHBV and Jacobs Solutions should accordingly be dismissed with prejudice.

2 This motion concerns only the Highway Plaintiffs. Defendants therefore limit this section to the allegations relevant to their claims.

3 The FAC repeatedly relies on and purports to characterize the PMC Contract, and their "venture" theory hinges on CHBV's contractual role in World Cup stadium construction. *See, e.g.*, FAC ¶¶ 22, 57, 62, 120, 198. The Contract is therefore properly considered at the Rule 12(b)(6) stage as a document incorporated by reference and integral to the Complaint—particularly where Plaintiffs' counsel have received it from Defendants pursuant to the terms of a Protective Order in *F.C. v. Jacobs* and subsequently referred to the PMC Contract in oral argument and written submissions to the court in that matter. Movant's Appx., p. 15, 18 – *F.C.* Joint Discovery Submission; Movant's Appx., p. 41:7-25, 56:4-19 – Transcript of *F.C.* Discovery Conference; *see, e.g.*, *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (courts may consider an "indisputably authentic copy" of a document if the "document is referred to in the complaint and is central to the plaintiff's claim"). At this stage, the PMC Contract's text provides the context necessary for evaluating the sufficiency of Plaintiffs' pleadings, and nothing more. Should the Court conclude the Highway Plaintiffs have stated a claim, any assessment of whether the disputed facts establish—or negate—TVPRA elements would be premature without discovery. Under these circumstances, this motion should not be converted into a motion for summary judgment.

Plaintiffs allege that the SC hired contractors to build stadiums for the World Cup; those contractors retained subcontractors; and those subcontractors allegedly employed the Stadium Plaintiffs. *See* FAC ¶¶ 56–58, 61, 126. Plaintiffs assert that Defendants supported CHBV's work under the PMC Contract and benefitted financially from the stadiums being built "more quickly and cheaply than would have been possible without Plaintiffs' forced labor." FAC ¶¶ 144-46.

The Highway Plaintiffs are differently situated. The FAC asserts that the Highway Plaintiffs were employed by Habtoor, which was a contractor allegedly retained by Ashghal to deliver road infrastructure. FAC ¶ 62. The FAC does not allege that either Defendants or the SC employed the Highway Plaintiffs, contracted with Habtoor, or contracted with Ashghal.

In fact, the FAC makes scant reference to Habtoor and Ashghal at all. The FAC mentions Habtoor just twice outside of the unamended Plaintiff-specific paragraphs: once in the conclusory list of purported venture participants and once in the assertion that "Ashghal and other agencies"—the FAC does not say precisely who—hired Habtoor. FAC ¶¶ 34, 62. Ashghal is mentioned only four times, with no factual detail about how it operated or what work it allegedly performed. FAC ¶¶ 34, 56, 62. And the FAC describes the "diverse and wide-ranging" roadworks in extraordinarily vague terms, referencing "substantial road, highways, expressway, and highway projects," including "major expressways, ring roads, and highways throughout the area of Qatar." FAC ¶¶ 56, 57 n.2.

The one thing the FAC does make clear is that Ashghal—not the SC and not any

Defendant—was allegedly responsible for delivering the road infrastructure project(s) on which the Highway Plaintiffs allegedly worked. FAC ¶¶ 56, 62. Plaintiffs attempt to muddy that distinction by alleging that the SC was responsible for "coordinating and monitoring" all infrastructure "related" to the World Cup. FAC ¶ 56. In turn, the FAC alleges CHBV was "paid to act on the Supreme Committee's behalf" under the PMC Contract to perform unspecified "coordination and monitoring functions" and "work with the Supreme Committee to recommend corrective action" for infrastructure projects that other Qatari government agencies had the responsibility to deliver. FAC ¶¶ 22, 57, 62. But those new allegations are both generalized and untethered to any specific road project, action, Highway Plaintiff, or Defendant.

[redacted]

The FAC contains no specific allegations that CHBV, the SC or any Defendant in fact monitored or provided particular coordination functions, assurance or support to the road infrastructure projects, that any specific recommendations were made to Ashghal, or whether Ashghal responded to or ignored any such recommendations.

## ARGUMENT

### I. The Highway Plaintiffs Still Have Not Plausibly Alleged a § 1589(b) Claim.

The FAC still does not state a § 1589(b) claim. It does not plausibly allege a venture that includes the Highway Plaintiffs' work on road infrastructure projects, and it does not plausibly allege that any Defendant participated in such a venture with Habtoor or Ashghal. Because the Highway Plaintiffs have failed to cure the deficiencies the Court identified, their claims must be dismissed with prejudice.

#### A. Plaintiffs Plead an Impermissibly Overbroad and Incoherent "Venture"

Plaintiffs' amended "venture" theory fails. It is incoherent, overbroad, and unsupported by the PMC Contract. Plaintiffs once claimed that the venture "involved the construction of stadiums" and that Defendants were "at the heart of the venture" as program managers for stadium construction. Dkt. 36, at 13. That theory is gone, and replaced with a boundless concept that could (and seems designed to) encompass claims by any worker on any construction project in Qatar. The Court should reject that expansion and limit any cognizable "venture" to projects CHBV was actually engaged to help deliver—World Cup stadiums, not nationwide roadworks.

*First*, the FAC does not coherently define what the "venture" includes or excludes. The Original Complaint at least ***attempted*** to tether the "venture" to "[t]he construction and upgrade of these twelve stadiums and related infrastructure" pursuant to CHBV's PMC Contract with the SC. Dkt. 1, ¶ 22. That limit was critical to the *F.C.* court's holding on "venture." *F.C. v. Jacobs Solutions Inc.*, 790 F. Supp. 3d 1158, 1190 (D. Colo. 2025) ("[D]efinitionally, the plaintiffs have limited their alleged venture to the construction and

upgrade of twelve stadiums in preparation for the World Cup[.]"). The FAC abandons that limit. It now adds airports and the "proposed nationwide metro network," then layers on 11 road projects [redacted] and whose relevance or connection to the World Cup stadiums is unexplained. FAC ¶¶ 22, 56, 57 n.2.

The FAC then gestures, more broadly still, to "several roads around Al Rayyan" and "other major roads within central Doha," the country's capital with over one million residents. *Id.* Those are not defined projects. Al Rayyan and Doha are major cities. Superficial references to roads in those metropolitan areas are not project definitions. They are geographic generalities that in no way remediate the FAC's failure to specify the roads the Highway Plaintiffs allegedly worked on or link those projects to Defendants.[4]

The FAC fails to identify which projects fall within the venture, which do not, or how the Highway Plaintiffs' work fits within this "venture." The FAC effectively just adds Ashghal and Habtoor to the non-exclusive list of venture participants. *See* FAC ¶ 34. That cannot be the "more" this Court was looking for. A purported venture defined at that level of generality is not a venture at all. *Coubaly v. Cargill Inc.*, 144 F.4th 343, 348 (D.C. Cir. 2025) ("The Plaintiffs' first mistake is their failure to clearly—or even coherently—define the 'venture' in which the Importers allegedly participated.").

*Second*, the alleged venture is too broad to sustain a TVPRA claim. The FAC now expands the "venture" to encompass "the construction of non-competition venues and

4 To be sure, Plaintiffs did not amend a single Plaintiff-specific paragraph in the FAC to state that any Plaintiff worked on any of the 11 specific roads now listed as part of the venture. Dkt. 64-1, at 73-101.

major infrastructure projects that were needed for the World Cup," as well as "substantial road, expressway, and highway projects." FAC ¶¶ 22, 57 n.2. Plaintiffs attempt to justify that expansion by reference to the PMC Contract. That theory proves too much.

[redacted] The TVPRA does not reach that far. Just as "a 'global supply chain' is not a venture," neither is a national economy. *See Doe I v. Apple Inc.*, No. 1:19-cv-03737, 2021 WL 5774224, at *10 (D.D.C. Nov. 2, 2021). There simply is no meaningful association in fact in so broad a venture. *See Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019).

*Third*, the PMC Contract forecloses Plaintiffs' expanded "venture" theory. [redacted]

[redacted] The FAC attempts to collapse that distinction. But the PMC Contract does not permit it.

*Finally*, the FAC does not allege the contractual nexus this Court required in *F.C.* There, the Court relied on the contractual allegations that Defendants and the SC managed stadium construction, including that "all contracts for the World Cup stadium builders acknowledged CH2M and Jacobs Engineering's oversight role." *F.C.*, 790 F. Supp. 3d at 1186–87. No such allegations exist here.

Here, Plaintiffs do not explicitly allege Ashghal and Habtoor had a contractual relationship. Plaintiffs are deliberately vague and say only "Ashghal and other agencies employed contractors such as Habtoor Leighton Group." FAC ¶ 62. Plaintiffs also do not allege that Habtoor's contract with Ashghal, if any, "acknowledged [Defendants'] oversight role." And, critically, Plaintiffs do not allege any contractual or commercial relationship—direct or indirect—between Defendants and Ashghal, Habtoor, or any entity working on road work. They rely instead on vague assertions that "CH2M Hill" could "recommend corrective action" to other Qatari government agencies. *Id.* ¶ 62. That is not analogous to the contract-based management role alleged in *F.C.* Without an alleged contractual or operational nexus, there is no venture linking Defendants to the Highway Plaintiffs, Habtoor, or Ashghal.

**B. Defendants Did Not Participate in the Newly Alleged "Venture"**

Even if the Court were to accept Plaintiffs' expanded "venture," the FAC still does not plausibly allege that any Defendant participated in it. Plaintiffs' allegations of "participation" reduce to two categories: conclusory assertions derived from contract language and a single LinkedIn profile. Neither suffices.

*First*, the FAC contains no project-specific or Plaintiff-specific allegations of "participation" by Defendants. Plaintiffs do not allege a single instance in which any Defendant coordinated, monitored, or supported the Ashghal-Habtoor road projects. They do not identify any communication, directive, inspection, or recommendation tied to any project on which the Highway Plaintiffs worked. They do not even explain what "coordination" or "monitoring" meant with respect to the Ashghal-Habtoor road projects.

The FAC's allegations stand in stark contrast to the stadium-related allegations this Court found sufficient in *F.C.* There, Plaintiffs alleged that CHBV provided "customized" construction management services on the Stadium projects. *F.C.*, 790 F. Supp. 3d at 1171, 1189; *see also* FAC ¶¶ 57, 61 (repeating allegations regarding CHBV's work as "Precinct Health Safety and Environment Manager" at Al Thumama Stadium). Those allegations, though limited, were central to the Court's finding of "participation" in *F.C.* and this matter. *See F.C.,* 790 F. Supp. 3d at 1189; Dkt. 57, at 10. The same is true in the *Omnicom* litigation, where the court emphasized "active, targeted, and continuous support." *A.A. v. Omnicom Grp., Inc.*, No. 25-CV-3389, 2026 WL 504904, at *12 (S.D.N.Y. Feb. 24, 2026) ("Only those who provided active, targeted, and continuous support… can be said to have participated in [the venture]."). The FAC contains no comparable

allegations here. There are no tailored services tied to any road project. That omission is dispositive.

*Second*, the FAC at most asserts general "participation" by CHBV, a now dismissed entity, via conclusory allegations about the PMC Contract. [redacted] Plaintiffs attempt to blur that distinction by referring generically in the FAC to "CH2M." That pleading tactic fails. The FAC fails to allege how the remaining Defendants each participated in the expanded "venture" with respect to any coordination or monitoring of Habtoor's road works by CHBV. [redacted] does not plausibly establish participation by these Defendants.

*Third*, even if conclusory allegations could satisfy the participation element, the limited arms-length advisory role attributed to CHBV in the FAC does not constitute "participation" in a TVPRA venture. Plaintiffs must allege more than an "arms-length transaction." Dkt. 57, at 10. Even the "ability to perform a 'third-party audit'" without an accompanying contractual duty does not qualify as participation. *F.C.*, 790 F. Supp. 3d at 1190. Plaintiffs vaguely assert that "CH2M" could "coordinate," "monitor," and "recommend" action on highway construction projects throughout Qatar and seek to imply the same contractual relationship between CHBV and both the Highway and Stadium Plaintiffs. [redacted] Nor do Plaintiffs allege that Ashghal "commission[ed]" CHBV "to monitor and control their [highway] builders" under the PMC Contract. *See id.* In so broad a venture, the lack of contractual relationship and control

is fatal to a finding of participation. *Doe 1 v. Apple Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024). And even if CHBV did provide advisory recommendations regarding (as opposed to directly manage and control) infrastructure projects, services were provided to the SC (CHBV's client) and not the independent government agencies who did not request, commission, or contract for such services. Dkt. 57, at 10 ("participation" satisfied for Stadium Plaintiffs since Defendants provided specialized services "directed at" the SC).

*Finally*, Plaintiffs' reliance on a single, irrelevant LinkedIn profile to allege "participation" only underscores the need for dismissal. Plaintiffs claim that a Mr. Miro Imsirovic worked on "expressways" and that he was "[s]upervis[ing] actual progress of work" and "coordinat[ing] the work of contractors." FAC ¶ 60(j). But they omit a critical fact: Mr. Imsirovic ***did not work for any Defendant***. The same LinkedIn profile that Plaintiffs cite reflects that Mr. Imsirovic worked for Halcrow CH2M—an entity that appears nowhere in the FAC. Movant's Appx., p. 5 – Imsirovic LinkedIn. The work of a non-party employee does not establish participation by Defendants; it highlights the absence of any credible allegation tying Defendants themselves to the highway projects at issue.

The FAC offers only generalized contract language, entity-blurring references to "CH2M," and a stray LinkedIn profile tied to a non-party. That is not enough to plausibly plead "participation" in a TVPRA venture.

## II. The Highway Plaintiffs Lack Standing

### A. Without "Participation in a Venture," There Cannot Be Standing

The Highway Plaintiffs do not have standing because they have failed to plausibly allege that Defendants participated in a nationwide highway construction venture. The

Court's prior order on standing was premised on Plaintiffs having adequately pled that Defendants participated in a venture by "signing a contract to oversee and ***manage*** construction of all the facilities and infrastructure for the World Cup." Dkt. 57, at 5-6. In the Court's view, that alleged management role supplied the causal link for Article III standing. *Id.* But as shown above, the FAC does not plausibly allege that Defendants participated in any venture encompassing the Highway Plaintiffs' work. *Supra,* Section I. [redacted]

### B. In Any Event, Habtoor Leighton Breaks the Chain of Causation

The Highway Plaintiffs also lack standing because their alleged injuries were caused by independent third parties—Ashghal and Habtoor—and are therefore not "fairly traceable" to Defendants' conduct. *Spokeo, Inc. v. Robins* 578 U.S. 330, 338-39 (2016).

In *F.C.*, Plaintiffs' alleged injuries were "fairly traceable" to Defendants because the Court found Defendants were not "wholly independent actors." 790 F. Supp. 3d at 1173–74. The Court found Defendants were contractually tied to the SC, which was contractually tied to Plaintiffs' employers, and Defendants allegedly had authority to oversee Plaintiffs' work. *Id.*

That is not this case. Plaintiffs allege that Habtoor is a contractor of Ashghal or possibly "other agencies," not the SC. FAC ¶ 62. Plaintiffs do not allege any contractual relationship between Defendants and either Ashghal or Habtoor. They do not allege that Defendants had authority to manage or supervise Ashghal's work. And they do not allege

that Ashghal or Habtoor were obligated to follow any recommendations. [redacted]

*Toretto*, which the *F.C.* Court relied upon for its standing analysis, underscores the Highway Plaintiffs' lack of standing. *See F.C.*, 790 F. Supp. 3d at 1173. There, traceability existed because the defendant had a "direct contractual relationship" with the third party, had "the authority to supervise" the third party, and both the defendant and third party "advertised themselves as partners." *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 469, 474 (S.D.N.Y. 2021). None of those features is alleged here.

The Highway Plaintiffs instead rely on a chain of speculation: Defendants may have made nonbinding recommendations to the SC; the SC might have taken those recommendations to Ashghal; Ashghal might have taken those recommendations on board; Ashghal might have directed Habtoor (if it even contracted with Habtoor); and Habtoor employed Plaintiffs. That is not traceability. It is impermissible conjecture. *See Murthy v. Missouri*, 603 U.S. 43, 57–58 (2024) (expressing disapproval of standing based on "guesswork as to how independent decisionmakers will exercise their judgment").

Ashghal and Habtoor are independent of Defendants. Their conduct breaks the causal chain, if any exists. Plaintiffs' theory would permit any subcontractor employee on any infrastructure project in Qatar to sue Defendants based on generalized allegations of "coordination." Article III does not allow that result and Plaintiffs thus lack standing.

## CONCLUSION

For all of these reasons, the Court should dismiss the First Amended Complaint with prejudice with respect to the 19 Highway Plaintiffs.

Dated: May 4, 2026
New York, New York

DEBEVOISE & PLIMPTON LLP

/s/ William H. Taft V

Maura Kathleen Monaghan
Mark W. Friedman
William H. Taft V
James P. Schaefer
Justin R. Rassi
Lisa W. Lachowicz
Ardis Strong
Alessandra G. Masciandaro
DEBEVOISE & PLIMPTON LLP
66 Hudson Blvd.
New York, NY 10001
Telephone: (212) 909-6000
mkmonaghan@debevoise.com
mwfriedman@debevoise.com
whtaft@debevoise.com
jpschaefer@debevoise.com
jrassi@debevoise.com
lwang@debevoise.com
astrong@debevoise.com
amasciandaro@debevoise.com

Habib Nasrullah
Frederick R. Yarger
Danyaal Waheed
WHEELER TRIGG O'DONNELL LLP
370 17th Street
Suite 4500
Denver, CO 80202-5647
Telephone: 303-244-1800
nasrullah@wtotrial.com
yarger@wtotrial.com
waheed@wtotrial.com

*Attorneys for Defendants*

**CERITIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, the foregoing was served via e-mail on:

Sean Grimsley
Eric Olson
Jason Murray
Abigail Hinchcliff
Isabel Broer
Samara Hoose
Meredith Wheeler
Noah Nix
Bianca Miyata
OLSON GRIMSLEY KAWANABE HINCHCLIFF & MURRAY LLC
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com
ahinchcliff@olsongrimsley.com
ibroer@olsongrimsley.com
shoose@olsongrimsley.com
mwheeler@olsongrimsley.com
nnix@olsongrimsley.com
bmiyata@olsongrimsley.com

Eli J. Kay-Oliphant
Ryan R. Sparacino
Anthony Asuncion
SPARACINO PLLC
1920 L Street NW, Suite 835
Washington, D.C. 20036
Telephone: (202) 629-3530
eli.kay-oliphant@sparacinopllc.com
matt.fisher@sparacinopllc.com
anthony.asuncion@sparacinopllc.com

*Attorneys for Plaintiffs*

*s/ Justin R. Rassi*
Justin R. Rassi

*Attorney for Defendants*